DUBUQUE FRUIT COMPANY, Appellant, v. C. C. EMERSON & COMPANY et al., Appellees.

BANKS AND BANKING: Deposits—Title to Deposited Drafts. The
1  act of a consignor in drawing against a consignee a draft (with bill of lading attached) in favor of a bank, and depositing the same in said bank and receiving credit on his checking account to the full amount thereof, constitutes the bank the unqualified owner of the draft and of the proceeds thereof, notwithstanding the fact that at a later time the consignor recognized the right of the consignee-drawee to a reduction on the draft, and requested

the bank to make such reduction, and the bank voluntarily complied with the request. (See Book of Anno., Vol. 1, Sec. 9490, Anno. 9.)

**EVIDENCE:** Judicial Notice—Attaching Bills of Lading to Draft.
2 Judicial notice will be taken of the custom of attaching bills of lading to drafts.

**TRIAL:** Verdict—Absence of Formal Verdict. When a judgment rests
3 solely on a question of law, the court may peremptorily enter it, without mandatory direction to the jury to return a formal verdict.

Headnote 1: 7 C. J. p. 635. Headnote 2: 23 C. J. p. 76. Headnote 3: 38 Cyc. p. 1588.

*Appeal from Dubuque District Court.*—D. E. MAGUIRE, Judge.

JANUARY 12, 1926.

THE opinion states the facts. Judgment for intervener, from which the plaintiff appeals.—*Affirmed.*

*John J. Kintzinger,* for appellant.

*Brown, Lacy & Clewell,* for appellee.

DE GRAFF, C. J.—This appeal presents a contest between plaintiff and the intervener over a fund under garnishment by virtue of a writ caused to be issued by plaintiff to secure a

1. BANKS AND BANKING: deposits: title to deposited drafts.

claimed indebtedness owed to plaintiff by the defendant, a nonresident, who is not interested in the outcome of the issue involved herein. Upon the conclusion of the evidence, the trial court sustained the intervener's motion for judgment, on the primary ground that the testimony of the intervener as to its title and ownership of the fund in suit was without conflict, and consequently no fact question existed for submission to the jury. The applicable legal principle in cases of this character is well recognized. It is the fact side that provokes the difficulty.

The controversy and its origin may be briefly stated in this wise. On March 9, 1922, the defendant Emerson & Company, of St. Paul, sold to Hanson & Son, of Dubuque, and shipped via Chicago Great Western Railway, a carload of potatoes, for

which a bill of lading was issued.  The defendant drew a draft on the consignee, Hanson & Son, payable to the order of the intervener, American National Bank of St. Paul.  This draft, with the bill of lading attached, was deposited by the defendant, in the ordinary and customary manner of making deposits, with the intervener-bank, and full credit was given to the checking account of the defendant, who was a long-time depositor in said bank.  The intervener immediately sent the draft, with bill of lading, to the First National Bank of Dubuque for collection. The drawee of said draft paid to the Dubuque bank the amount necessary to effect a settlement thereof, but, before the proceeds were remitted to the intervener, the fund was garnished by the plaintiff herein.

I.   To whom did the money belong at the time of the service of the writ of garnishment?  This is the pertinent question. *Prima facie* the passing to the credit of a depositor of a draft drawn in favor of a bank, not indicating that it was deposited merely for collection, transfers the title to the bank.  *National Bank of Webb City v. Everett,* 136 Ga. 372 (71 S. E. 660).

It may be observed that the law governing a holder in due course is not here involved.  See *Trevisol v. Fresno Fruit Growers Co.,* 195 Iowa 1377.  Nor does the fact that the bill of lading was attached to the draft alleged to have been purchased by the intervener affect the decision in the instant case.  We take judicial notice of the custom of attaching bills of lading to drafts.  The intervener was not purchasing potatoes, and if it purchased anything, it was the draft.  The bill of lading was attached as a matter of convenience in the transaction, and in order that the bill of lading, which constituted the evidence of title to the consignment, would not be delivered before the draft was paid.

2. EVIDENCE: judicial notice: attaching bills of lading to draft.

The intervener-bank is one of three things: (1) a simple collector or agent of the drawer (defendant Emerson & Co.), (2) an absolute purchaser and owner of the draft, or (3) a conditional owner thereof.  Whether the bank is a simple agent for collection or the absolute owner necessarily depends upon the circumstances of the transaction.  The intention of the parties must be considered.  The record does not show that there was

any agreement or conversation between defendant-drawer and the intervener-bank at the time the draft was deposited, but the evidence is conclusive that the intervener-bank gave to the defendant full credit at the time of the deposit.

The numerical weight of authority is to the effect that, when a person brings a draft to his bank and said draft is made payable to the bank or is unrestrictedly indorsed to it, and requests that the amount thereof be put to his checking account and subject to his personal check, and the bank complies with the request, and nothing more appears, it will be conclusively presumed that the bank has become the unqualified and absolute purchaser and owner of the draft, and consequently the owner of any proceeds derived therefrom. This theory of the law is in harmony with the well accepted canons of business. It is the natural construction of the action of the parties themselves, and the rule results in fixing definitely the relations of the parties, which is no small virtue in the realm of law. See 3 Ruling Case Law 524; *Vickers v. Machinery W. & S. Co.*, 111 Wash. 576 (191 Pac. 869); *National Bank of Webb City v. Everett*, supra; *Hurst-Boillin Co. v. Kelly*, 146 Tenn. 251 (240 S. W. 771); *Merchants Nat. Bank v. Parker*, 142 Ga. 265 (82 S. E. 658); *Anderson v. Keystone Chem. Sup. Co.*, 293 Ill. 468 (127 N. E. 668).

Under the facts in the instant case, the legal principle herein announced is controlling. *Acme Hay & M. F. Co. v. Metropolitan Nat. Bank*, 198 Iowa 1337. The drawer of the draft was a regular customer of the intervener-bank, and had been for twenty years. The draft was payable to the bank, and was regularly deposited by the drawer. Credit was received on the books of the bank. The defendant (drawer) in the regular course of dealing with the bank not only had the right to draw against this deposit in his name, but in fact did check against it, and exhausted, within three days after said deposit was made, all of the proceeds, together with other funds then on deposit belonging to the defendant.

What evidence is claimed by plaintiff upon which a conflict is predicated? Does the fact, as suggested by plaintiff, that the draft was forwarded by the intervener to the First National Bank of Dubuque with a letter, for collection, tend to rebut the

claim of ownership on the part of the intervener? We think not. The intervener, at the time that it forwarded the draft to the Dubuque bank, did not state or advise that it was for collection on behalf of the defendant. The intervener, at the time the draft was forwarded, had paid full face value for it, and was entitled, as a matter of law, to the proceeds, as the owner thereof.

One further evidential claim is made by plaintiff. It appears that, after the consignment of potatoes reached its destination, some controversy arose between the purchaser, Hanson & Son, and the consignor, Emerson & Company, relative to the quality of the potatoes shipped. In order to settle this difficulty, the consignor wired the consignee:

"Instructing bank to reduce draft seventy five cents cwt."

The intervener, acting upon the instruction of the drawer, did reduce the draft, and the checking account of Emerson & Company at the bank was surcharged to that extent. This was a mere matter of subsequent agreement. It was an accommodation by the bank to a customer. It was not legally obligated to respect the instructions, and was in no manner bound by the agreement relative to a reduction between the consignor and consignee. The bank, by this method, recognized a convenient means for the settlement of a controversy with which it was not concerned. It does not tend to prove that the defendant, as drawer, retained any control over the draft, thereby negativing the alleged ownership of the draft by the intervener-bank.

II.   One further error is assigned which merits brief attention. Appellant complains that a formal verdict was not returned by the jury under direction of the court, and argues that, in the absence of a verdict, there is nothing

3. TRIAL: verdict: absence of formal verdict. upon which to predicate the judgment.

The judgment in this case rests not upon the decision of a question of fact, but conclusively upon the decision of a question of law. The trial court adjudged that the intervener was entitled, as a matter of law, to the proceeds of the draft in question. The reception and recording of a verdict, under the circumstances, would have been an idle ceremony. *Bee Building Co. v. Dalton,* 68 Neb. 38 (93 N. W. 930); *Kirsh-*

*enbaum v. Massachusetts Bond. & Ins. Co.,* 107 Neb. 494 (186 N. W. 529).

Under the circumstances, the court had the power to frame a verdict and direct the jury to return same into court. It also had the power in a more direct manner to reach the same result by finding the fact, under the undisputed evidence, for itself, and entering judgment accordingly. *Gammon v. Abrams,* 53 Wis. 323 (10 N. W. 479); 38 Cyc. 1588.

We view the act of the court in entering judgment without a formal verdict as, at most, a harmless irregularity. *Duluth C. of C. v. Knowlton,* 42 Minn. 229 (44 N. W. 2). It worked no prejudice to the plaintiff.

The judgment entered is—*Affirmed.*

STEVENS, FAVILLE, and VERMILION, JJ., concur.