L. A. ANDREW, State Superintendent of Banking, Appellant, v. MARSHALLTOWN STATE BANK, Appellee.

IN RE CLAIM OF W. B. EVERIST.

BANKS AND BANKING: Deposits—General Deposit. The depositing
1    in a bank of money and checks which are at once entered upon the customer's pass book with right to immediately draw against the amount constitutes a *general* deposit.

BANKS AND BANKING: Deposits—When Deemed Made—Equitable
2    Preference. A deposit in a bank cannot be deemed a trust fund and entitled to an equitable preference in payment because of the

fact that the books of the bank show that the deposit was made *after* the bank had permanently closed its doors, when in truth the deposit was made *before* the bank so closed its doors.

**BANKS AND BANKING:** Deposits—Deposit of Checks—Presumptive
3 **Passing of Title.** The depositing in a bank of duly indorsed checks and the entry of the amount thereof on the customer's pass book with right to immediately draw against the same presumptively constitute the bank the owner of the checks, and the depositor has the burden to overcome the presumption.

**BANKS AND BANKING:** Deposits—Fraud in Reception. The fact that
4 a deposit in a bank was made only two hours prior to the permanent closing of the bank does not *necessarily* show that the bank was insolvent when the deposit was received and that the officers must have known of such insolvency, and that, therefore, the deposit was fraudulently obtained, and should be decreed to be a trust fund.

Headnote 1: 7 C. J. p. 630.  Headnote 2: 7 C. J. p. 752 (Anno.)  Headnote 3: 7 C. J. p. 635.  Headnote 4: 7 C. J. p. 752 (Anno.).

Headnote 3: 7 L. R. A. (N. S.) 695; 47 L. R. A. (N. S.) 556; 11 A. L. R. 1043; 16 A. L. R. 1084; 42 A. L. R. 492; 3 R. C. L. pp. 524, 525.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

DECEMBER 17, 1927.

Action by the claimant against the receiver of the Marshalltown State Bank, to obtain a preference on his claim against said receiver. From the judgment of the trial court establishing the said claim as a trust and a preference by reason thereof the receiver appeals.—*Reversed.*

*C. H. E. Boardman* and *H. G. Cartwright,* for appellant.

*E. N. Farber* and *W. D. Kearney,* for appellee.

WAGNER, J.—The Marshalltown State Bank was open for business on April 14, 1926, until the usual closing hour at 3 o'clock P. M. This was the last day of the existence of the bank as a going concern. The bank was not closed by the superintendent of banking, but about 5:30 P. M. of said day, the board of directors of the bank resolved to cease its operation as a bank. At the usual hour of closing, as aforesaid, the doors were locked, and at 3:30 P. M., the claimant made his presence known at one

of the doors of said bank; and in accordance with the rule or custom of the bank, when patrons manifested a desire to enter after the doors had been closed, the janitor unlocked the door, and the claimant entered the bank, desiring to make a deposit, having his pass book, and having in his possession $185 in currency and $319.91 in checks. He passed the same over the counter to one of the tellers of the bank, who gave the claimant credit in his pass book for the entire amount of both currency and checks, and the claimant retired from the bank. It was the practice or custom of the bank to strike its balances beginning at 3 o'clock P. M., and any deposits received after 3 o'clock did not appear upon the books of the bank as business transacted that day, but as transactions of the following day. Thus, the deposit of the claimant is shown upon the books of the bank as having been made on the 15th day, instead of the 14th day, of April.

Claimant makes some contention that his deposit was not a general deposit. It is shown by the record that, had the claimant drawn checks against his account, they would have been honored.

1. BANKS AND BANKING: deposits: general deposit. Moreover, the fact that the claimant of his own volition received credit in his pass book for the amount of the cash and checks negatives his claim that the deposit was not a general deposit. As to the distinction between a general deposit and a special deposit, and between a general deposit and a specific deposit, see *Officer v. Officer*, 120 Iowa 389. From the distinction there pointed out, we hold that the deposit made by the claimant was a general deposit.

Whatever assets the bank had on the 15th day of April, 1926, went into the hands of the receiver.

It is contended by the claimant that, since said deposit appears credited on the books of the bank as of the 15th day of April, 1926, said date was the date of his deposit, and since at

2. BANKS AND BANKING: deposits: when deemed made: equitable preference. that time the bank had ceased to function as such, the deposit was wrongful, and he is entitled, by reason thereof, to recover the same. The deposit made by the claimant occurred at the time when he left the money and checks with the bank and received credit therefor in his pass book, and the matter of giving him credit upon the books of the bank was a mere matter of bookkeeping, which, according to the custom and usage of the

bank, was made as of the following day. What are commonly called banking hours are created for the mere convenience of the bank. Any business transacted between the bank and others on a certain day, although it occurs after banking hours, is a transaction of that day, although it may not appear upon the books of the bank until the following day. The instant that the bank received the deposit and gave the claimant credit therefor in his pass book, the bank became the debtor, and the claimant the creditor. The depositor had the right to immediately draw upon the same. We therefore hold that the deposit was made on the 14th day of April, and before any resolution by the board of directors to cease the operation of the bank. See *In re Ruskay*, 5 Fed. (2d Series) 143.

It is next contended by the claimant that, in so far as the checks in the amount of $319.91 are concerned, the bank became the agent of the claimant for their collection. This subject is

3. BANKS AND BANKING: deposits: deposit of checks: presumptive passing of title.

fully discussed in *Acme H. & M. F. Co. v. Metropolitan Nat. Bank*, 198 Iowa 1337. We there held that, where a customer of a bank indorses to the order of the bank checks or drafts, and is given credit for the amount thereof, and has the right to check against the credit so given, in the absence of an agreement or understanding to the contrary, or proof of circumstances from which such an understanding may be inferred, the presumption is that title to the paper passes to the bank, and the relation of debtor and creditor is created. See, also, *Palo Alto County v. Ulrich*, 199 Iowa 1; *Dubuque Fruit Co. v. Emerson & Co.*, 201 Iowa 129. The claimant had the right to check against the amount which he had deposited. What is there in the record to overcome the presumption thereby created? The claimant relies upon what appears on his pass book, which is as follows:

"Always bring your book with your deposit. See that the entries agree with your ticket. This bank receiving out of town checks and other collections acts only as your agent, and does not assume any responsibility beyond due diligence on its part, the same as on its own paper."

It is not shown by the record upon what bank or banks the checks were drawn, or whether the banks upon which they were drawn were located within or without the city of Marshalltown. The burden rested upon the claimant to overcome the presump-

tion that the title to the checks passed to the bank. He has failed in his proof, and therefore this contention of the claimant's is without merit.

It is earnestly contended by the claimant that the record shows that, at the time of his making his deposit, the bank was insolvent, and that its officers knew that it was insolvent, and that, by reason thereof, he is entitled to impress a trust upon the fund deposited, which came into the hands of the receiver. In *Palo Alto County v. Ulrich,* supra, we held, in a case of this character, that, before the claimant can prevail, it must be shown that the bank was insolvent, and that the officers of the bank had knowledge of its insolvency, or that its condition at the time of receiving the deposit was such that they must be charged with knowledge that it would be unable to meet its obligations; and that proof of such knowledge or of such a condition is essential, to establish fraud on the part of the bank out of which a trust will arise, entitling the depositor to a preference. In said case we cite approvingly *Steele v. Commissioner of Banks,* 240 Mass. 394 (134 N. E. 401, 20 A. L. R. 1203). In the *Steele* case it is said:

4. BANKS AND BANKING: deposits: fraud in reception.

"The facts must establish the conclusion that the trust company accepted the deposit knowing, through its officers, that it would not and could not pay the money when demanded by the depositor."

The above and foregoing being the law, the question as to whether or not the claimant is entitled to impress a trust is one of fact for determination, and as to this matter the burden rests upon the claimant. It is shown by the record that negotiations were pending between the defendant bank and the First National Bank of Marshalltown for the taking over by the latter institution of the former, and that the defendant bank had reasonable hope that such a result might be accomplished until 4:30 P. M. of the 14th day of April. The cashier of the defendant bank, called as a witness in behalf of the claimant, testified:

"I think the advice came to us about 4:30 that the negotiations with the First National Bank had terminated."

He further testified that, in his judgment at the time of the closing of the bank, it was solvent, and had sufficient assets at that time to pay the liabilities. Mr. Berkley, a former employee of the bank, but the examiner in charge of the bank at the time

when he was called as a witness in behalf of the claimant, testified:

"I would say that on April 14th the bank was solvent. My opinion is that, as a going bank, it could now pay the liabilities from its assets."

It is not shown by the record of what the assets of the bank consisted, nor what portion is collectible, but it is shown that the depositors will receive from the receiver from 65 per cent to 75 per cent of their deposits. It is shown by the record that, at the time the bank ceased operation, it had in its vault cash in the amount of approximately $80,000, and had money on deposit in its correspondent banks in the sum of $112,000. None of its depositors had been refused payment, although there had been heavy withdrawals. Since the condition of the bank as to moneys available is as hereinbefore shown, and since the foregoing negotiations were pending between the two banks, it is apparent that its condition at the time of receiving the deposit from the claimant was not such as to charge the officers of the bank with knowledge of inability to meet its obligations. See *Palo Alto County v. Ulrich,* supra.

The claimant having failed in the requisite proof, the order and judgment of the trial court is reversed.—*Reversed.*

Faville, Albert, Morling, and Kindig, JJ., concur.