COKER & COMPANY *v.* FIRST NATIONAL BANK OF MEMPHIS, TENNESSEE.

1. A claimant of property which has been levied on, though he sells it while the claim case is pending, may at the trial thereof maintain his title to the property as it stood when the claim was filed.
2. Evidence tending merely to show that attorneys at law in whose office interrogatories were executed were associate counsel of the attorney representing at the trial of a case the party in whose behalf the interrogatories were sued out would not have shown that they were executed by employees of such associate counsel; nor would it have been proper to compel the attorney present at the trial to testify to any fact respecting the execution of the interrogatories of which he had no knowledge other than that derived from letters written to him by the absent attorneys.
3. Inaccuracy in a charge which could not possibly have injured the party complaining thereof does not afford any cause for granting him a new trial.
4. The drawee of a draft to which is attached a bill of lading under which goods are consigned to the order of the drawer acquires neither the right to the possession of the bill of lading nor title to the goods until he pays or secures the payment of the draft according to the custom of the trade or the course of dealing between himself and the drawer.
5. Where a bank advanced money upon such a draft, taking as security therefor the attached bill of lading properly indorsed, and, after a levy upon the goods as the property of the consignor, filed a claim thereto, its right to maintain this claim was not lost merely because, while the claim case was pending, the drawee refused to accept the goods and pay the draft, and in consequence the bill of lading was "indorsed over" to the consignor for the sole purpose of having him dispose of the goods for the bank's exclusive benefit.
6. The evidence in the present case not only warranted but demanded the verdict.

Argued October 5, — Decided October 29, 1900.

Levy and claim. Before Judge Reece. City court of Floyd county. August 21, 1900.

*M. B. Eubanks*, for plaintiffs. *Fouché & Fouché*, contra.

LUMPKIN, P. J. An attachment in favor of W. H. Coker & Co. was levied upon two car-loads of corn as the property of the Moulton-Davis Co., and claimed by the First National Bank of Memphis. The property was found not subject; and Coker & Co. excepted to the overruling of a motion for a new trial filed by them, the grounds of which presented the questions discussed below.

1. At the conclusion of all the evidence, Coker & Co. moved to dismiss the claim, on the ground that the claimant's evidence showed that after filing the claim it had disposed of whatever title it had to the property in dispute. There was no error in overruling this motion. "One who in good faith files a claim to property

levied on, and sells it during the pendency of the case, may still maintain his title to the property as it stood when claimed, and thereby protect himself and secure the rights of the purchaser under him." *Thomas* v. *Parker,* 69 *Ga.* 284.

2. During the progress of the trial, while J. S. Fouché, one of the attorneys for the claimant, was on the stand as a witness, he was asked by counsel for Coker & Co. whether or not Wilkinson & McGhee, a firm of Memphis attorneys, in whose office certain interrogatories for Moulton and Davis, sued out in behalf of the claimant, purported to have been executed, were not associated with the witness as counsel for the claimant. The witness answered that "all he knew about the matter was in the way of correspondence, and that some of the letters were in his possession." Complaint is made that the court erred in not requiring the witness to answer explicitly whether or not Wilkinson & McGhee were associated with him in representing the claimant; and in this connection the motion recites that the "plaintiff expected to show by the answer of such question that the interrogatories referred to were executed in the office of the claimant's attorneys and by the employees of said attorneys, and were therefore inadmissible." Even if the witness had stated that Wilkinson & McGhee were his associate counsel, the answer would have fallen far short of proving that the interrogatories were executed by the employees of the Memphis attorneys. Furthermore, it is clear that if Fouché had any knowledge at all with reference to this matter, it was derivable from correspondence, and it is therefore manifest that counsel for Coker & Co. were seeking to prove by hearsay an alleged fact as to the execution of the interrogatories in question. This they clearly had no right to do.

3. In one portion of his charge the judge in effect instructed the jury that delivery to the bank of bills of lading covering the shipments of corn, with drafts attached, passed title to the corn into the bank. This charge is excepted to on the ground that mere delivery of bills of lading unindorsed by the consignor can not operate to pass title. The criticism on the charge is well founded; but the error thus committed was harmless, because the evidence showed that the bills of lading referred to were properly indorsed, and as to this fact there was no controversy.

4. It appears from the record that the corn was shipped by the

Moulton-Davis Co. under bills of lading issued to it and stipulating for a delivery of the corn to the "shipper's order." These bills of lading, properly indorsed, as already stated, were delivered to the bank, and upon each was a memorandum giving direction to notify one Ragan, who was expected by the Moulton-Davis Co. to pay the drafts and take the corn on its arrival at Rome, his place of business. The bank, on the faith of the security thus afforded, advanced money to the Moulton-Davis Co. In this connection the court charged: "When a bill of lading is attached to a draft drawn on a third person, it will be treated as security for the draft, and neither title to the goods nor right to the bill of lading will pass to the drawee until, as required therein, he accepts, or accepts and secures, or pays the draft, as the case may be." This charge was excepted to on the ground that it was not pertinent to any issue involved in the case. We think otherwise; for surely it was proper for the court to inform the jury, as was in effect done, that title to the corn would remain in the bank until Ragan, the consignee, arranged with the bank to pay the drafts and procured from it a transfer of the bills of lading covering the shipments of corn.

5. The evidence discloses that, after the filing of the claim, Ragan, with the bank's consent, did take and pay for one of the carloads of corn. The other car he rejected, and it was sold in Augusta, Ga. The draft drawn on Ragan for the price of this car-load was returned to the bank unpaid. It then indorsed the bill of lading, which had been attached to the draft, "over to said Moulton-Davis Co.," with the request that they handle the corn for the bank's account and to its best advantage. The court was requested to charge the jury "that if, while this corn was levied upon and in the hands of the levying officer, the claimant indorsed a bill of lading back to defendant, the effect of such indorsement would be to put title back in the defendant," and it would be the duty of the jury to find the car-load of corn covered by this bill of lading subject. We think this request was properly refused. As has been seen, it was the right of the bank to maintain its "title to the property as it stood when claimed, and thereby protect itself," notwithstanding it may have parted with its title during the pendency of the case. Furthermore, it would seem that the Moulton-Davis Co. merely acted as trustees for the bank in thus taking a transfer of the property and selling it for the benefit of the bank to a pur-

chaser in Augusta; so that the corn could not be subjected to the payment of a debt due by the Moulton-Davis Co., even had a levy been made upon the same while in their hands awaiting the contemplated disposal.

6. The foregoing disposes of all the questions made in the motion for a new trial, except the general complaint that the verdict was contrary to the evidence. The evidence not only warranted but demanded the finding of the jury.

　　　　*Judgment affirmed. All the Justices concurring.*